UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

COREY BRIGGS,                                    :
          *Plaintiff,*                    :
                                            :
VS.                                              :    C.A. No. 1:26-cv-66
                                            :
TOWN OF WESTERLY, by and through                 :    **PLAINTIFF HEREBY DEMANDS**
its Finance Director, Dyann Baker, PAUL          :    **A JURY TRIAL**
GINGERELLA, ROBERT GREENE,                       :
AND NICHOLAS V. MOURADJIAN,                       :
          *Defendants.*                    :

## COMPLAINT

### Jurisdiction & Venue

1.      This action is brought pursuant to 42 U.S.C. § 1983 and § 1988 and the Fourth and Fourteenth Amendments to the United States Constitution. Title 28 U.S.C. § 1331 and § 1343 provide federal question jurisdiction over all federal claims.

2.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to this claim occurred within the judicial district of Rhode Island.

### Parties

3.      Plaintiff Corey Briggs is a citizen of the United States and a resident of the State of Rhode Island. Plaintiff is a patrolman in the Coventry Police Department.

4.      Defendant Town of Westerly (the "City") is a duly incorporated municipality under the laws of the State of Rhode Island.  At all relevant times to this action, the Westerly Police Department was a department within the Town of Westerly. Dyann Baker is being sued under state law in her representative capacity pursuant to R.I. Gen. Laws § 45-15-5 as the Town of Westerly Finance Director.

1

5.  Defendant Paul Gingerella ("Chief Gingerella") was at all times relevant to this complaint the duly appointed Chief of the Westerly Police Department. His actions alleged in this complaint were taken under the color of the laws of the State of Rhode Island and the Town of Westerly. He is sued in his individual capacity.

6.  Defendant Robert Greene ("Lt. Greene") was at all times relevant to this complaint a duly appointed lieutenant of the Westerly Police Department. His actions alleged in this complaint were taken under the color of the laws of the State of Rhode Island and the Town of Westerly. He is sued in his individual capacity.

7.  Defendant Nicholas Mouradjian ("Cpl. Mouradjian") was at all times relevant to this complaint a duly appointed corporal of the Westerly Police Department. His actions alleged in this complaint were taken under the color of the laws of the State of Rhode Island and the Town of Westerly. He is sued in his individual capacity.

### Factual Allegations

8.  The preceding paragraphs are incorporated by reference as if set forth fully herein.

9.  On or about the morning of February 6, 2023, Plaintiff Corey Briggs was driving on Route 1 in Westerly when he observed his friend Thomas Northrup arguing with Mr. Northrup's neighbors David Marak and David Shenandoah, in the parking lot of a Mobil gas station located at 249 Post Rd., Westerly, RI 02891.

10. Plaintiff knew Mr. Northrup to have had problems with Mr. Marak in the past, and he was concerned that the argument might become physical.

11. Plaintiff stopped his car and told Mr. Marak and Mr. Shenandoah to leave.

12. The events are captured on surveillance video from the Mobil gas station.

2

13.    In his narrative to the police report, Officer Gavin C. Kinzer describes the surveillance video as showing the following upon Plaintiff's arrival:

> On camera at 08:34:30 [Plaintiff] appears to show up on scene in a gray vehicle which he parks on the shoulder of the road and exits. As [Plaintiff] appears you can see Shenandoah swing his right hand at Northrup striking him. At this point I observed Northrup start to advance on Shenandoah with his left hand pulled back. Northrup punched Shenandoah on the face before they grab each other and appear to start grappling to the ground . . . While Northrup and Shenandoah were fighting you can see [Plaintiff] push Marak away from Northrup and Shenandoah who were wrestling on the ground. [Plaintiff] then attempts to pull Shenandoah off Northrup. Marak then starts to walk toward [Plaintiff]. Marak and [Plaintiff] then grabbed each other and appear to be pushing each other while grabbing each other around the upper chest and neck area. Then, [Plaintiff] and Marak release each other. Marak then walks over and punches Northrup on the back at one time with his right hand before [Plaintiff] pulled him away and pushed him to the ground. [Plaintiff] then attempts to separate Marak and Northrup again while also pushing Marak away. Everyone appeared to separate and then the police arrive shortly after."

14.    Five Westerly officers arrived at the scene at or around this time.

15.    Plaintiff advised one of the officers, Officer Alison Bostek, that he "was just trying to break up the fight." This is recorded in Officer Bostek's narrative to the police report.

16.    Officer Kinzer spoke with an independent witness who stated that Plaintiff "was trying to stop the fight by pulling them apart." Another independent witness told Officer Kinzer that Plaintiff "arrived and pulled Northrup off of Shenandoah."

17.    While still at the scene, Officer Kinzer, Officer Bostek, and Det. Mills observed the gas station surveillance video, which provided a clear view of the incident, as described above by Officer Kinzer.

18.    Officer Bostek wrote in her narrative to the police report: "It appeared to me that [Plaintiff] was pushing Marak away multiple times and preventing him from going near Northrup. Eventually, [Plaintiff] and Marak began pushing and shoving each other and Marak again tried to attack Northrup who was on the ground with Shenandoah. [Plaintiff] then pulled Marak away and threw him to the ground."

19.     At the scene, Mr. Marak told Officer Kinzer that Plaintiff had grabbed him by the neck while Mr. Northrup and Mr. Shenandoah were fighting.

20.     The surveillance video that the officers viewed did not support Mr. Marak's description of what actually occurred. The surveillance video also blatantly contradicts many aspects of Mr. Marak's subsequent written statement.

21.     Officer Bostek's narrative in the police report states Officer "Kinzer determined, after watching surveillance and speaking with witnesses, that Northrup, Marak and Shenandoah were going to be charged with Disorderly Conduct. [Officer] Kinzer updated [Defendant] Cpl. Mouradjian of his findings and Northrup, Marak, and Shenandoah were placed into custody."

22.     There was no probable cause to arrest Plaintiff.

23.     The responding officers did not arrest Plaintiff at the scene.

24.     Officer Bostek spoke to [Plaintiff], who told her that "he was just trying to break up the fight."

25.     According to Officer Bostek's narrative, Plaintiff told her that "Northrup and Marak have been at it for the last 20 years and that 'you guys have done nothing about it.'"

26.     After the arrests, Cpl. Mourdajian told Officer Bostek that a witness statement was needed from Plaintiff.

27.     Officer Bostek called Plaintiff on the telephone and asked him to come into police headquarters to provide a written statement.

28.     Plaintiff complied and arrived at the police headquarters.

29.     At police headquarters, Plaintiff complained about the delay in taking a statement, voiced criticism that Mr. Northrup was arrested, and was critical regarding the Westerly Police Department's failure to properly address Mr. Northrup's and Mr. Marak's neighbor dispute.

4

30.    Plaintiff, who is a patrolman in the Coventry Police Department, identified himself as a police officer to members of the Westerly Police Department.

31.    Plaintiff expressed his complaints directly to Chief Gingerella and Lt. Greene.

32.    According to Officer Kinzer's narrative, Plaintiff "argue[d]" with Lt. Greene and Chief Gingerella.

33.    Plaintiff did not raise his voice or act physically aggressive or disruptively.

34.    Upon information and belief, Chief Gingerella, Lt. Greene, and Cpl. Mouradjian entered into an agreement to arrest Plaintiff in order to retaliate for his complaint.

35.    According to Officer Bostek's narrative to her police report, Cpl. Mouradjian had Officer Bostek watch the surveillance "numerous times" in his presence.

36.    Cpl. Mouradjian advised her that the video showed Plaintiff actively getting involved in the altercation. Officer Bostek added in her narrative that Plaintiff "did tell me on scene that he was trying to break up the altercation."

37.    The video clearly shows Plaintiff attempting to break up the altercation and pushing Mr. Marak back from attacking Mr. Northrup.

38.    However, Officer Bostek continues: "After speaking with our supervisors, it was determined [Plaintiff] would be charged with Disorderly Conduct."

39.    Cpl. Mouradjian advised Plaintiff he was being arrested for Disorderly Conduct shortly thereafter.

40.    Plaintiff was arrested for alleged disorderly conduct that occurred at the scene, not at the police headquarters, even though none of the officers that responded to the scene had chosen to arrest Plaintiff.

41.    Other than Mr. Marak, whose statements clearly were rendered blatantly false by the video, no witness had alleged that Plaintiff had engaged in any type of behavior set forth in R.I. Gen. Laws § 11-45-1 - Disorderly conduct.

42.    Plaintiff also was charged with Simple Assault.

43.    Other than Mr. Marak, whose statements clearly were rendered blatantly false by the video, no witness had alleged that Plaintiff had acted with malice.

44.    Based on the video evidence, independent witness statements, and the fact Mr. Marak's account of Plaintiff's involvement in the incident was rendered blatantly false by video evidence, Defendants knew that there was no probable cause to arrest Plaintiff.

45.    Defendants caused Plaintiff to be criminally prosecuted (Case No. 41-2023-00181).

46.    A policymaker for the Town of Westerly informed Plaintiff that the Town would drop charges against Plaintiff, but only if he agreed to waive legal claims against the Town.

47.    Plaintiff, knowing that he would be vindicated at trial and appreciating that his civil rights had been violated, refused to waive his right to file a legal claim.

48.    Plaintiff proceeded to trial in Rhode Island District Court.

49.    At the close of trial testimony, Plaintiff's motion for acquittal was granted.

50.    Plaintiff experienced emotional stress as a result of being arrested and prosecuted for a crime he did not commit.

51.    Plaintiff has continued to feel the effects of his wrongful arrest and prosecution.

52.    As a police officer, Plaintiff has suffered damage to his reputation. News outlets have published multiple articles and online posts stating that Plaintiff had been arrested and was being prosecuted.

53.     The Town of Coventry suspended Plaintiff's employment as a result of his arrest and prosecution.

54.     Plaintiff is in the military. He was scheduled to be promoted to a higher rank. Because of the arrest and pending charges, he was not promoted. Not being promoted has resulted in and continues to result in financial loss.

55.     Plaintiff incurred approximately $7,500 in legal fees as a result of being arrested and prosecuted for a crime he did not commit.

## COUNT I
### Violation of Fourth Amendment (42 U.S.C. § 1983)
### against Paul Gingerella, Robert Greene, and Nicholas Mouradjian

56.     The above paragraphs are incorporated by reference.

57.     Defendants Chief Gingerella, Lt. Greene, and Cpl. Mouradjian acted intentionally, with malice and knowing disregard for Plaintiff's constitutional rights, in falsely detaining, arresting, and imprisoning him against his will.  Plaintiff was conscious of, and at no point consented to, the confinement by the Defendants.

58.     The actions of Defendants Chief Gingerella, Lt. Greene, and Cpl. Mouradjian in falsely detaining, arresting, and imprisoning Plaintiff without warrant, reasonable suspicion or probable cause violated Plaintiff's Fourth Amendment rights to be free from unreasonable search and seizure, pursuant to 42 U.S.C. § 1983.

59.     Defendants Chief Gingerella, Lt. Greene, and Cpl. Mouradjian's actions were the direct and proximate cause of violations of Plaintiff's constitutional, state, and other legal rights, and of damages including bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of income, and legal expenses as set forth above.

## COUNT  II
### Violations of First, Fourth and Fourteenth Amendments (42 U.S.C. § 1983) against Paul Gingerella, Robert Greene, and Nicholas Mouradjian

60.     The above paragraphs are incorporated by reference.

61.     The Defendants Chief Gingerella, Lt. Greene, and Cpl. Mouradjian pressed charges against Plaintiff, while knowing the charges were baseless and lacked probable cause.

62.     Statements made by Defendants to justify the charges against Plaintiff were made to retaliate against him for verbally expressing disagreement with them about their interpretations of the law and facts, including whether he had a right to criticize them for how Officers handled the incident.  Defendants Chief Gingerella, Lt. Greene, and Cpl. Mouradjian acted intentionally with malice and knowing disregard for Plaintiff's constitutional rights.

63.     Defendants Chief Gingerella, Lt. Greene, and Cpl. Mouradjian had Mr. Briggs arrested without probable cause in retaliation for exercising his clearly established right to criticize the Department.

64.     Defendants Chief Gingerella, Lt. Greene, and Cpl. Mouradjian were motivated to execute the wrongful arrest by Mr. Briggs' criticism.

65.      Defendants Chief Gingerella, Lt. Greene, and Cpl. Mouradjian's actions were the direct and proximate cause of violations of Plaintiff's constitutional, state, and other legal rights, including a loss of liberty, and of damages including pain, suffering, mental distress, anguish, humiliation, loss of income, and legal expenses as set forth above.

## COUNT  III
### Violation of First, Fourth and Fourteenth Amendments (42 U.S.C. § 1983) against Town of Westerly

66.     The above paragraphs are incorporated by reference.

67.     Chief Gingerella is the final policy maker at the Town of Westerly Police Department.

8

68.    Chief Paul Gingerella's acts represent official policy.

69.    Upon information and belief, Defendants Chief Gingerella, Lt. Greene, and Cpl. Mouradjian, acting in their official capacity, unlawfully retaliated against Mr. Briggs for exercising his First Amendment right to speak. Defendants Chief Gingerella, Lt. Greene, and Cpl. Mouradjian, arrested him, and caused him to be jailed to retaliate against him for verbally expressing disagreement with them about their interpretations of the law and facts, including whether he had a right to criticize them for how Officers handled the incident.

70.    Defendants made, influenced, or participated in the decision to prosecute Mr. Briggs, including by drafting and submitting misleading investigative reports and affidavits, and omitting key and material facts.

71.    There was no probable cause for the criminal prosecution of Mr. Briggs.

72.    Mr. Briggs suffered a deprivation of his liberty and irreparable harm.

73.    The prosecution was resolved in Mr. Briggs' favor.

74.    The Town of Westerly, by and through the final policy decision made by Chief Paul Gingerella, took actions that were the direct and proximate cause of violations of Plaintiff's constitutional, state, and other legal rights, and of damages including loss of liberty, bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of income, and legal expenses as set forth above.

## COUNT IV
### Negligence against Town of Westerly

75.    The above paragraphs are incorporated by reference.

76.    At all times, Defendant Town of Westerly owed members of the public, including Mr. Briggs, the duty to act with reasonable care, including but not limited to adequate training, supervising, and disciplining of its employees regarding the de-scalation of conflicts.

9

77.    Defendant Town of Westerly breached the duty of care by failing to provide adequate training, supervision, and discipline to its employees regarding the use the de-scalation of conflicts and the constitutional requirement that persons be arrested only upon probable cause.

78.    To the extent any of the foregoing allegations of negligence are inconsistent with the allegations in support of Mr. Briggs' claims against the Town of Westerly under 42 U.S.C. § 1983, the allegations of negligence are pleaded in the alternative, consistent with Rule 8(d)(2) of the Federal Rules of Civil Procedure.

79.    As a direct and proximate result of Defendant Town of Westerly's negligent acts and/or omissions, Mr. Briggs suffered damages including pain, suffering, mental distress, anguish, humiliation, loss of income, and legal expenses as set forth above.

### COUNT V
### Malicious Criminal Prosecution against Town of Westerly

80.    The above paragraphs are incorporated by reference.

81.    Defendant Town of Westerly maliciously instituted the criminal prosecution of Mr. Briggs, without probable cause, and it was terminated in Mr. Briggs' favor.

82.    Defendant Town of Westerly maliciously continued to prosecute Mr. Briggs in the absence of probable cause, and it was terminated in Mr. Briggs' favor.

83.    Defendant Town of Westerly's malicious prosecution of Mr. Briggs caused him irreparable harm.

84.    As a direct and proximate result of Defendant Town of Westerly's unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendants are liable.

85.     The Defendant Town of Westerly acts, by an through its agents, were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

86.     To the extent any of the foregoing allegations of Malicious Prosecution are inconsistent with the allegations in support of Mr. Briggs' claims against the Town of Westerly under 42 U.S.C. § 1983, the allegations set forth in Count V are pleaded in the alternative, consistent with Rule 8(d)(2) of the Federal Rules of Civil Procedure.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Corey Briggs prays that a judgment for the following relief be entered in his favor and against Defendants Paul Gingerella, Robert Greene, Nicholas Mouradjian and the Town of Westerly for:

a.  all reasonable compensatory damages, including for personal injury, mental anguish, emotional distress, pain and suffering, lost wages, and loss of earning capacity;

b.  reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and for the prosecution of the Plaintiff's 42 U.S.C. § 1983 claims;

c.  reasonable attorneys' fees and court costs pursuant to federal and state law;

d.  legal interest; and

e.  such other and further relief as this Honorable Court deems right and just.

**PLAINTIFF DEMANDS TRIAL BY JURY AS TO ALL ISSUES SO TRIABLE.**

PLAINTIFF,
Corey Briggs,
By his Attorney,

/s/ Christian W. Tracy
Christian W. Tracy, Esq.      Bar No. 9797
Bianchi Brouillard Sousa & O'Connell, P.C.
56 Pine Street, Suite 250
Providence, RI 02903
Telephone: 401.223.2990
Facsimile: 877.548.4539
Email: ctracy@bbsolaw.com

Dated: January 30, 2026